UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANK WILLIAMS,<br>    Plaintiff | Civ. No. _____ |
| vs. | COMPLAINT |
| INTER-CON SECURITY SYSTEMS, INC.,<br>    Defendant | Jury Trial Demanded |

Plaintiff Frank Williams, by his attorneys Eisenberg & Schnell LLP, John Griffin, Jr. and Katherine L. Butler, as and for his complaint against Inter-Con Security Systems, Inc, alleges as follows:

## NATURE OF THE ACTION

1. Had Frank Williams been judged on the quality of his work, rather than the defendant's bias, he would never have stopped serving as a Court Security Officer protecting the public and members of the federal judiciary in the federal court buildings in New York City and the Southern District of New York. But, although Mr. Williams performed his job as a Court Security Officer with distinction, he lost his job because of something outside his control – Inter-Con's disability discrimination.

## JURISDICTION AND VENUE

1. This case is brought under the Americans with Disabilities Act, 42 U.S.C. §12101 et seq. This Court has subject matter jurisdiction of this case pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343.

2. This case is also brought under the New York City Human Rights Law ("NYCHRL" or "City Law"), prohibiting discrimination based on disability. This Court has

supplemental jurisdiction of Plaintiff's claims under the NYCHRL, Administrative Code of the City of New York §§8-101 et seq), pursuant to 28 U.S.C. §1367(a).

3. Plaintiff has exhausted his administrative remedies and complied with statutory prerequisites by filing a complaint with the EEOC and receiving a right to sue letter. Plaintiff timely files this lawsuit to vindicate his rights.

4. Pursuant to §8-502(c) of the City Law, plaintiff will serve this Complaint on the New York City Commission on Human Rights and on the City of New York Corporation Counsel.

5. Mr. Williams was working in the New York Federal Court buildings in the Southern District of New York, and would have continued to work there if he had not been wrongfully terminated. Venue is invoked pursuant to 28 U.S.C. §1391.

## PARTIES

6. Plaintiff Frank Williams is an adult resident of Somerset County, New Jersey.

7. Defendant Inter-Con Security Systems, Inc. is a California corporation located at 210 S. Delacey Ave. Pasadena, California 9115. Inter-Con is licensed to do business in New York State. Inter-Con does business in New York State.

## STATEMENT OF FACTS

8. Plaintiff Frank Williams, is well qualified to protect members of the federal judiciary, other federal personnel, and the public. He served with distinction in the military and then as a police officer in New York City from 1963 until he retired as a police officer with honors in 1981. While a police officer, he was promoted to Sergeant.

9. In 1997, Mr. Williams became a Court Security Officer ("CSO") in the Southern District of New York. Due to his exemplary skills and competence, he was promoted to Lead Court Security Officer for the Southern District of New York in 2003.

10. During his career as a CSO, multiple contractors have been his titular employer, and each of them signed contracts that allowed the United States Marshals Service ("USMS") to determine the fitness for duty of all CSOs.

11 Inter-Con is the contractor that discharged Plaintiff. Like its predecessors, Inter-Con appreciated Mr. Williams' work and had no issues with his performance. Despite his exemplary work, Inter-Con terminated Mr. Williams' employment on September 24, 2014.

12. Before he started working as a CSO, Mr. Williams submitted to a fitness for duty examination. He submitted to those examinations annually throughout his employment. At no time until his firing did Inter-Con or the USMS contend that he was unfit. Inter-Con's own records demonstrate that it at no time believed that Mr. Williams was impaired in his ability to perform his job. Yet because its contractual partner, the USMS, deemed him unfit for duty, Inter-Con fired him.

13. Pursuant to its contract with the USMS, Inter-Con allows the USMS to evaluate CSO medical documentation and decide when CSOs employed by Inter-Con will be suspended or terminated based on that documentation. Inter-Con has thus delegated fitness for duty decisions regarding its employees to the USMS.

14. Until the fitness for duty exam made the subject of this suit, at no time did USMS deem him impaired in any way.

15. At all times, Mr. Williams was a qualified person with a disability, either actual or perceived. Evaluations of his job performance were consistently positive.

16.     Mr. Williams's last annual fitness for duty examination occurred on July 2, 2013, at a facility approved by Inter-Con and by a doctor selected by Inter-Con.

17.     The examining physician hired by Inter-Con confirmed Mr. Williams' fitness for duty.  That recommendation was then sent to the USMS, which has contracted with outside doctors to review and make recommendations about fitness for duty determinations.  Inter-Con thus delegates fitness for duty determinations to the USMS, which then delegates to Federal Occupation Health ("FOH") the task of making recommendations.  FOH then delegates to outside contractors the actual fitness for duty recommendations.  After that, the USMS makes the final decision on who can work as a CSO and who cannot.

18.     On October 20, 2013, contract physician Dr. Haviva Goldhagen reviewed Mr. Williams' medical examination and determined that Mr. Williams' blood pressure was "elevated during the examination" and that he has a "history of hypertensive heart disease, with left ventricular hypertrophy and mild left ventricular dysfunction."  She also demanded that Mr. Williams submit to a Bruce Protocol stress test, despite the lack of symptoms.  No action was taken for several months.  Thus, despite Dr. Goldhagen's speculation about his condition, Inter-Con allowed him to work for another eight months.  On March 20, 2014, Mr. Williams submitted to the Bruce Protocol stress test and records were provided to Dr. Goldhagen.

19.     Months later, Mr. Williams received an email with an attached memo from Dr. Goldhagen, which was dated June 12, 2014.  Dr. Goldhagens' recommended that Mr. Williams be removed from his job due to her perception of his heart condition and overall endurance. No supervisor, no treating physician nor any coworker has ever questioned his fitness, endurance or ability to perform his CSO duties. To the contrary, the cardiologist who submitted a report to Dr. Goldhagen confirmed that he was fit for duty and that there was no heart condition affecting his

ability to work.  USMS is aware that this sort of thing occasionally occurs, and it encourages contractors such as Inter-Con to advise it of mistakes, conflicts or other issues concerning the fitness for duty determinations of CSOs.

20.     Mr. Williams took an independent stress test on July 10, 2014, at the New Brunswick Cardiology Group that he clearly passed, exercising to 10 METS of energy output and one hundred and six percent of maximum predicted heart rate. Mr. Williams sent his results to Inter-Con, which is supposed to forward them to USMS with a request for reinstatement under the contract.  USMS will consider such requests if made within 30 days of a medical disqualification.  Mr. Williams complied and submitted the Bruce Protocol stress test information to Inter-Con.  However, Inter-Con failed to request that the USMS reinstate him under the contract.  Instead, according to USMS, Inter-Con emailed USMS on July 18, 2014 and said that "Inter-Con is not going to reinstate him," so USMS did not reinstate him, despite the fact that updated information did show that he was fit for duty.

21.     USMS confirmed that the reason why the updated information was not acted upon by FOH was because Inter-Con failed to request reinstatement for Mr.Williams.

22.     Neither a suspension nor a firing was appropriate under the ADA.  Mr. Williams's heart condition did not impair his ability to perform his job.  The demand for a Bruce Protocol stress test was an unlawful qualification standard that screens out, or tends to screen out those with disabilities.

23.     After an exhaustive investigation by the EEOC, a cause determination was issued in Mr. Williams' favor.  For its part, the USMS settled with Mr. Williams and allowed him tp return to work.  Hence, this suit is for backpay and compensatory damages for the period of time that he was suspended and unemployed.

24. Even though Inter-Con knew that Mr. Williams had provided information that would clear him and knew that USMS could reinstate him, it unilaterally fired him based upon the perception of disability even though it had received his medical information and test results and knew that he was qualified. Inter-Con also refused to ask that USMS consider the updated Bruce Protocol results that Mr. Williams had submitted.

25. Inter-Con neither cooperated with Plaintiff or with the USMS  It neither timely provided the request for reinstatement or medical information and test results to the USMS for evaluation, nor alerted the USMS to its previous error, nor performed its own evaluation of Mr. Williams's abilities.

26. Inter-Con terminated Mr. Williams on September 24, 2014, but it did not tell him at that time. On October 6, 2014, Mr. Williams finally received a notice from Inter-Con stating that, effective September 24, 2014, he was discharged. By this time, Inter-Con had told USMS to disregard his updated medical information because "Inter-Con is not going to reinstate him."

27. Even though Inter-Con  knew that Mr. Williams was eminently qualified to work as a CSO, it subjected him to illegal screening requirements and made illegal demands for medical information and testing in violation of the ADA, 42 U.S.C. §12112(b)(3), (b)(6), and (d)(4)(A) and the City Law. Inter-Con, subjected him to some of this discrimination pursuant to its contractual arrangement with the USMS. Inter-Con was Mr. Williams's employer and the responsibility for the discrimination falls on Inter-Con. See 42 U.S.C. §12112(b)(2). These illegal acts caused Mr. Williams's damages, including lost wages and benefits and mental anguish.

## COUNT I Americans with Disabilities Act

28.     Plaintiff repeats and realleges paragraphs 1 through 27 as if such paragraphs were fully set forth herein.

29.     The plaintiff is a qualified individual with a disability.  The plaintiff performed his job as a Court Security Officer with distinction, but was subjected to illegal screening requirements and medical examinations because of a disability in violation of 42 U.S.C. §12112(b)(3), (b)(6), and (d)(4)(A).  He was subjected to unlawful medical examinations, then fired because of his disability, in violation of 42 U.S.C. §12112(a).  He has an actual disability as he was assessed by Inter-Con.  He was regarded as having a disability, based on Inter-Con's perception about his condition.  He was suspended and discharged because of a record of a disability.  Inter-Con's conduct violates the Americans with Disabilities Act, which prohibits discrimination in employment on the basis of disability.

## COUNT 2 - NYCHRL

30.     Plaintiff repeats and realleges paragraphs 1 through 27 as if such paragraphs were fully set forth herein.

31.     By the acts and practices described above, defendants intentionally discriminated against Mr. Williams because of his disability, in violation of the NYCHRL, Administrative Code of the City of New York § 8-107(1)(a).

32.     Defendant acted with malice and/or reckless indifference to Mr. Williams's protected rights under the NYCHRL.

33.     Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, emotional distress and other compensable damages as a result of defendants' discriminatory actions.

## DAMAGES

34. The damages suffered by the plaintiff include lost wages and benefits as well as compensatory damages for the injuries suffered at the hands of the defendants, including, but not limited to, mental anguish.

35. Further, because Inter-Con's actions were of the sort that render the imposition of punitive damages appropriate, the plaintiff is entitled to an award of these damages, which he seeks.

## RELIEF REQUESTED

WHEREFORE, plaintiff Frank Williams respectfully asks this court to enter a judgment:

1. Declaring that the acts and practices complained of in this Complaint are in violation of the Americans with Disabilities Act and the New York City Human Rights Law;

2. Enjoining and permanently restraining these violations of law;

3. Directing the defendant to pay the plaintiff actual and compensatory damages that he suffered, past and future;

4. Directing the defendant to pay plaintiff punitive damages for its conduct in an amount as yet to be ascertained;

5. Awarding plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

6. Awarding plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

7. Awarding plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

8. Awarding plaintiff such other relief, legal or equitable, as may be warranted.

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Mr. Williams demands a trial by jury in this action.

Dated: November 26, 2018

Respectfully submitted,

/s/   Herbert Eisenberg
**HERBERT EISENBERG**
Eisenberg & Schnell, LLP
233 Broadway, Suite 2704
New York, NY 10279
heisenberg@eisenbergschnell.com
Telephone:   212-966-8900
Fax:          212-966-2505

**JOHN GRIFFIN, JR.**
Texas Bar No. 08460300
203 North Liberty Street
Victoria, Texas 77901
jwg@lawmgk.com
Telephone:   361-573-5500
Fax:          361-573-5040

**Katherine L. Butler**
Texas Bar No. 03526300
1007 Heights Boulevard
Houston, Texas 77008
kathy@butlerharris.com
Telephone:   713-526-5677
Fax:          713-526-5691

ATTORNEYS FOR PLAINTIFF